I believe Mr. Phillips represents the appellant. The calendar has you appearing from the United States Department of Justice, but actually you're from the California Department of Justice. Yes, Sacramento.  Thank you, Your Honor. Representing the Again, I tried a case before you ten years ago in Los Angeles. I'm not sure if you remember, but it must have been a pleasant experience. Yes. I'd like to reserve five minutes for rebuttal. May it please the Court, my name is Jeffrey Phillips. I'm with the California Office of the Attorney General. I represent defendants and appellants at the California Dental Board. To advertise as a specialist in California, a dentist must be a specialist, which means that they have completed a formal, full-time, rigorous post-dental program at a university-based dental school. Dr. Potts is misleading the public into believing that he's a specialist by advertising his credentials as a specialist when, in fact, he is a general dentist. California Business and Professions Code Section 651H5A prohibits misleading speech. What does he say in his ad? Specialist? He uses the term diplomate, board certified, and fellow. Those terms specifically have been found to be misleading. He uses board certified? He's not. I didn't see him arguing that. Yes. He is arguing, both in the complaint and in his brief, that he wants to advertise that he's a board specialist, a diplomate, and a fellow. The record does not contain an actual ad that he's used. Is that right? Correct. It's what he wants to do. Correct. He actually advertises. He advertises, but we don't have – I looked in the record, because I was curious if there was an actual ad. There is not. Dr. Potts has never been prosecuted. There's no investigation. But you didn't – in the litigation of this case, you didn't get copies of his ads. Correct. And include them. Correct. What we're talking about is what he would like to do. What he is actually doing. It's alleged in the complaint that Dr. Potts advertises his diplomat credential. Uh-huh. He also advertises that he is board certified, and he also advertises that he is a fellow, consistent with the Bingham II decision. That's alleged in the complaint. That's alleged in the complaint. In his – did you take his deposition? No, Your Honor. I took over the case at this level. Okay. All right. Go ahead. I'm sorry. But I believe that's in his deposition. It's undisputed. Okay. The statute prohibits general dentists from using misleading terms, such as specialist, specialized, or equivalent terms, to advertise a specialty credential unless it's from a bona fide credentialing organization as defined by the board or one of the recognized specialty areas. Right. Recognized by the American Dental Association. The statute is not a complete ban on commercial speech because it leaves sufficient alternative avenues in which a general dentist can advertise. It allows a general dentist to advertise his practice emphasis. If they use a disclaimer, general dentist, Dr. Potts can advertise that he offers implants, or he practiced implantology, or that he practices implant dentistry, or has a practice limited to implants, if he also includes the term, a disclaimer, general dentist. The statute also does not prohibit Dr. Potts from advertising his training, his education, his experience, the number of procedures that he has performed in implant dentistry, how long he has practiced implant dentistry, or any kind of special programs or special seminars that he has obtained or have attended in implant dentistry. The statute is narrowly tailored because it only limits the advertising of a credential in a specialty area by general dentist. What's he doing? What's he doing that Peel does not authorize? I mean, it seemed to me, in Peel, the lawyer says, I want to say that I'm certified by the National Board of Trial Advocacy or something like that. And he succeeds. He's kind of a cash-work majority, but he does succeed. In Peel, it was undisputed that the training that that lawyer had was rigorous. The Alabama Supreme Court and the Minnesota — If he can make out a case that the implant dentist organization is rigorous in applying its diplomat requirements, then he's okay. Is that right? Correct. And the statute, the second part of the statute, defines what a bona fide credentialing organization is. Yes, but I don't see anything in Peel saying that some other agency is entitled to say how much education is required. It's just that it has to be rigorous. Let's say that, all right, there's no ADA-certified program for implant dentistry, but we want to do something. So we're going to say that if you take six months of courses somewhere and pass some sort of a test, that we're going to say that, okay, you're a diplomat of implant dentistry. It's true. It tells something to the consumer that this person has gotten more training than the average. Why isn't that just commercial speech? It is commercial speech. They could advertise the training that they have. It just could not advertise the fact that they're a diplomat. Diplomat is defined in the dictionary as a specialist. California has set a minimum standard on which you can advertise your diplomate status if you are a bona fide credentialing organization under the statute, which requires a full-time formal postgraduate program at a dental school. Well, what's your definition of the specialist? The specialist is the bona fide credentialing organization has four requirements in the statute. You're either an ADA-recognized specialist, and if you're not an ADA-recognized specialist, there is an alternative avenue that California recognized. And you have to have four things. You have to have didactic training. You have to have clinical experience. You have to have oral and written testing based on psychometric principles. And most importantly, and what's in dispute here, is that you attend a postgraduate formal full-time program at a university-based dental school. That's what a specialist is. A specialist is someone who completes a post-dental program at a … Well, I mean, I suppose that's true. I would also say maybe a specialist is someone who specializes in a particular kind of treatment. That would be confusing because if you're a general dentist and you have not attained that advanced degree and you advertise yourself as a specialist, that's misleading to the public. And that's what this statute is designed to protect. You're saying you can advertise practice confined to implant dentistry as long as you say you're a general dentist? Correct. Correct. And there's one other distinguishing factor in Peel is that there was no allegation that the credentials that the trial specialist had was misleading. The government conceded that it was not misleading. Here, we have five reasons why this credential is misleading. First of all, this is misleading because it's undisputed that the survey evidence demonstrates a confusion in consumer confusion. The anecdotal evidence also demonstrates that in other surveys in other states, in organization, when they held their diplomat credential out, most people believed that they were specialists. Most people believed that they had advanced training similar to an oral surgeon, an orthodontist, or an endodontist, which is not true. Now, the district court didn't place much stock in the survey evidence that was submitted. Right. It did not. Basically thought that it was unreliable. It didn't say that. It admitted it into evidence. It gave it little weight, but there's no contradicting evidence. It's undisputed, and it's unrefuted. There is evidence of consumer confusion in this case that is not disputed. Well, was it proper for the district court in summary judgment to give it, you know, to say I'm not giving it much weight? Well, I don't think that was proper. The district court properly admitted it. I think the weight is to the trier of fact. But the court, even though it did give it little weight, it failed to recognize that it was undisputed. There was no material issue, and it's not unreliable. Well, they were disputing the reliability of the survey data. The opponents were. The experts.  Their experts questioned the methodology that was employed. Correct. Why would it matter on summary judgment whether it were disputed or not? Well, the evidence was they only attacked the methodology. They didn't attack or offer any contradictory evidence, any other surveys or any other evidence that people were not using. If not, they had, though, once the court admitted your evidence, you simply got a dispute. It's not a summary judgment case, is it? No. It's undisputed evidence. Summary judgment should have been rendered in our favor because it's undisputed evidence. No, I don't. As I understood what happened here, you submitted your evidence, right? Correct. The declaration, the survey studies, whatnot, all that. They come back and they say, ah, you know, they try to get it excluded on evidentiary reasons. It's not. Correct. They attack the methodology. Yes. They say, Judge, this just isn't reliable. This does not show, you know, in survey studies, this just does not show that these what he wants to do is misleading. They didn't say that. This is just not good. This is just not. You can't give this any weight, Judge. And the Court disagreed. So the Court said, well, I'm going to give it just a little weight, a feather. But on summary judgment, as I think as Judge Cox is saying, once there's a dispute over that kind of fact, that kind of issue, it seems like they have to go to a trial where, you know, evidence is presented about the methodology that was used and the Court makes a finding, yes, it's reliable, I'm relying on it, or no, it's not reliable, I'm not relying on it, and therefore there's no misleading, and therefore the State loses because you haven't shown, there's nothing in the findings of the statute, and there's no survey data showing that it's misleading, and therefore, you know, you can't regulate this speech. No, that's not correct. In my circuit, methodological errors go to the weight of the evidence, not the admissibility of the evidence. No, but I'm saying it can be admitted, but a trial, the judge could say, I don't give this any weight. It's just not, it doesn't measure up to expert standards. No weight. Therefore, it's like as if there's none, there's no evidence showing confusion. The judge could have done that, but he did give it some weight, a little weight, but he admitted it. I don't think in this case you can have a trial over the methodological, you often have a trial over experts, where experts dispute something. Correct. Frequently. Once you articulate a reasonable basis to question the credibility of the evidence, you get a trial, do you not, whether you dispute it or not? Yes. Okay. Well, I'd like to just quickly address the alleged errors. They first said Dr. Kamen's survey preferred males over females. Well, 50% of the respondents were females. Secondly, they said that they failed to target people actually seeking implants, dentistry. At the mall survey, they targeted the general public. These are the type of people who would see ads generally. We didn't confine the surveys to only those people looking for implant procedures, and that opinion by the court had no expert basis on which to exclude it. Their experts report didn't even discuss that alleged deficiency, the fact that the universe was too broad. The advertisements would be seen by the public at large and could influence someone to whether or not they would be seeking implants. I suppose the question is sort of compared to what? If someone says practice confined to implant surgery, maybe 5% of the public thinks that means they're board certified. I guess what I'm saying is almost anything you say anywhere is potentially misleading to a few of the public. Well, actually it is misleading. You see that in the genetic global evidence and other surveys in Florida and in Louisiana. It's in the legislative history. It's also seen in the dictionary in that it's inherently misleading. Let me ask a question about the fit, and that is would it be misleading to say I'm Dr. So-and-so, I'm a diplomat of the Association of Implant Dentists, and then an asterisk, and then at the bottom it would say this organization is not an ADA certified organization. I have five minutes left. The disclaimer that the lower court recommended is impractical for various reasons. First of all, it's very long. It's tough to put that on a business card, or how do you put that disclaimer in an ad? It's not simple. What does it mean that you're not affiliated with the American Dental Association or not recognized by the board? That doesn't answer the question of whether you're a specialist or a general dentist. And also the disclaimer has that added confusion. It puts this organization and others in a potentially negative light. They're not affiliated with. They're not recognized by. What does that mean? This disclaimer in our statute, general dentist, is simple. It answers the question of whether they're a specialist or a general dentist. It's easy to put on a business card. It's practical, and it's understood. It's not confusing. It doesn't add more confusion, and there's no problem with additional compelled speech. It doesn't cast any organization in a negative light. So that's why this disclaimer is a very good workable disclaimer, which has been tested in other states such as Louisiana. It just makes common sense that if you have a disclaimer, general dentist, you're not going to confuse it with any other advertising. To put both diplomate, which means specialist, in an ad, along with the term disclaimer general dentist, that would be confusing. What is this doctor? He's a diplomate. Is he a specialist, or he's a general dentist? The two terms are mutually exclusive. That would add to more confusion. I'd like to reserve the rest of my time. This one. Good morning, Your Honors. My name is Frank Rick representing the American Academy of Applied Dentistry and Dr. Potts. I would just like to note at the outset that when you add up the dentists represented by AID, the Amicus Academy of General Dentistry, and the Amicus American Academy of Cosmetic Dentistry, we have about 45 licensed practicing dentists, 45,000, in the United States represented by those three organizations. So we certainly don't have an analogy with pain management, and we certainly don't have any analogy with bogus credentials. We're talking even less than peel. This is not about specialty. This is not about specialist.  We don't want to be advertised as specialists. We don't want to be advertised as, as counsel indicated, board specialists. We've never asked that. We don't claim to be that. We simply want to tell the public the simple truth. If a general dentist goes beyond an area and obtains expertise, credentialing, testing, a bona fide entity such as the NBTA and peel, whether it be in general dentistry, cosmetic dentistry, implant dentistry, that is valuable information the public in California needs to hear. When you can get out of dental school in California, get a license, and do any kind of dentistry, orthodontics, oral surgery, peridontics, ADA specialty areas, as well as non-specialty areas, such as implant dentistry, forensic dentistry, cosmetic dentistry, no prerequisite standards, if the state's interest is protecting the public, it should mandate the advertising of this kind of credential. I bet they'd use the opposite. I can come to California. I say I because I'm a licensed dentist, but not in California. I could come to California, get a license, put a full page ad, dental implants, Frank Reckner. I've never placed one. That would be perfectly legal. It's about playing fields. It's about turf. I couldn't, if I had an academy credential fellow, I couldn't say fellow American Academy of Implant Dentistry. For some reason, the state says, no, that's information that could confuse our people into thinking you're a specialist. Well, if you accept that argument, which clearly we don't accept, but if you do, what's the antidote for specialist? Counsel just said it, general dentist. That's the antithesis of specialist. So if the state wants to impose a disclaimer on a credential, that's fine, general dentist. Don't put some arbitrary hurdle of it must be based on formal, full-time, post-graduate education, and then say, okay, that's the minimal fit required, and go ahead and do it as long as you meet that arbitrary standard. That's simply shutting in the back door, which you act like you're not closing the front door. Peel, board-certified civil trial specialist. We don't want anything close to that. We don't want to be called a specialist. We accept for purposes of the dental profession, the ADA's lock on determining specialties. That's fine. We don't claim to be, we're not asking to be called specialists, but let us tell the public truthfully our credentials based upon objectively verifiable information, which they can easily ascertain by asking the doctor or by going to the Internet. I don't think the public in California is as obtuse as apparently the California Dental Association does. And I might note, counsel made some indication of something in the legislative history. I don't think you'll find anything in the legislative history in this case. Well, it looks to me, and I'm only just, I have no idea what the California legislatures are up to, but it looks to me like they, you know, after the district court struck down the original statute, they looked to the Florida scheme, which is very similar. The Florida statute, which they then modeled this new statute after judge, after the judge's ruling here. And you're right. They didn't make any findings here. I'm low for legislative findings about confusion, and there is none in the legislature. And interestingly, after a ten-year battle we've been going through, maybe the state could have produced one citizen that was misled. Well, nonetheless, you can, they attempted to use survey information, which seems to be permissible as far as I can tell. Your Honor, they attempted. And I think the lower court was generous in his. . . I'm not sure what the lower court did with respect to the survey evidence. Well, interesting, that's a similar situation in the Eleventh Circuit. If you are familiar with that. . . Yeah, I've been thinking. . . The lower court dissected the studies. We had no opportunity to dissect them because they were submitted after discovery cutoff. Said no need to reopen discovery. They're really, they don't muster up to what's required under central Hudson. They're woefully inadequate except for showing perhaps a competitive advantage, which may in fact be justified. And then the appellate court, again, just looking at a self-serving affidavit from Ph.D., including what the surveys allegedly represent, said, gee, we think it shows some confusion, therefore. However, Florida did not have an absolute prohibition. This state is saying, unless your credential is based upon this postgraduate education. . . The way they define. . . Yes. Right, a bona fide. Florida doesn't have that arbitrary. . . If it's not an ADA specialty, then you must, you can advertise your credentials, but you have to attach these, we would say, onerous disclaimers. . . Right. . . . which counsel, I agree with him, believes are problematic. Unfortunately, we couldn't get the Eleventh Circuit to agree with that. Yes, Judge Cox. Counsel, let me tell you what bothers me about your case so you can tell me where I'm wrong. They argue that what you want to do is misleading. You do not claim the right to mislead the public. Absolutely not. As I understand your argument. They submit, as I understand it, some evidence that what you want to do is misleading. And in response to that, you say there are reasons to question the credibility of that evidence. Normally, the result of that is a trial, is it not? Why not in this case? Why does that not mean we've got to have a trial in this case? That's what bothers me about it. My simple answer would be, Your Honor, I think that was within the purview of the district court as the gatekeeper of scientific evidence to make the determination that it wasn't reliable, it wasn't material, it wasn't based on the. . . He didn't do that, though. He let it in. He did. He let it through the gate. He let it through the gate and then gave it. . . No weight. No weight. That's correct. That is correct. How can you do that on summary judgment? Your Honor. . . It's hard. But you can do it. There's ways you can do it. In deference, again. . . You can say. . . You can look at the. . . at it and say no rational trier of fact could give any weight at all to this evidence or no rational trier of fact could find confusion in the public from this evidence. But I don't. . . That isn't exactly what he said. And as to, again, Judge Cox, potentially confusing, again, what consumer is going to think that fellow American Academy of Implant Dentistry or fellow American Academy of Cosmetic Dentistry is a specialist? First of all, Dr. Kamens, one of the survey people of the 200 telephone survey, admitted there was no definition of specialist. My question to him was, and it's in the record, for all you know, those people thought specialist meant somebody with more education, training, and experience in implant dentistry. He said that's right. And as to which thought it was that versus ADA specialist, I don't know. That kind of disembowels any significance to the survey when the surveyor admits that flaw. But in any event, regardless, wouldn't General Dentist, those two words, make it clear to the world? I mean, I suspect we could get a survey that found out the public doesn't know what DMD means or DDS means. I think a survey can accomplish anything you want it to accomplish depending on who's paying for it. But again, a reasonable disclaimer, General Dentist, no problem. We think that would be perfectly fine. Just lastly, we have serious concerns about the quality and quantity of evidence that should be required of a state to show that the restriction advances, truly advances, in perhaps the least restrictive way, the end they seek to achieve, and in this case, not confusing the public. We don't think an arbitrary hurdle of full-time advanced education is real because as the evidence indicates. Why is that arbitrary? It's not based on anything, Your Honor. A lawyer gets out of school or a dentist gets out of school. If you want to expose yourself to increased study in estates or planning or criminal law or implant dentistry, you go through CE courses. You join private organizations that are espousing that particular area of practice. You learn. You go through their testing. You go through their credential process. That means something. The public would benefit by knowing what that credential is. So when you set an arbitrary standard of formal postgraduate, California Dental Association, and organized dentistry knows, there are no formal, full-time educational programs that in most areas of dentistry that are not already specialty areas of dentistry because practicing dentists can't close up their offices, give up their practice, and go back to school. You do what you can to advance yourself through CE. Just like the state of California requires 25 hours each year for CE licensure. They obviously believe it means something, it enhances the dentist, but do it in a focused area. Do it in a credible organization where there's testing and valid requirements and criteria. You can't tell the world about that title. And again, pain management allows diplomate, and if there's anything that's close to a sham, it would be pain management, 5,000 people, but they don't have to be licensed medical professionals, 80% grandfathered, and even they can say by the AG's approval, diplomate. And that's a statutorily defined protective word, board certified. But they're not even granting the appellate. You know, I know you don't give much stock to the survey data that was presented to the district court, and the district court didn't give much stock to it, but, you know, the person who conducted the mall survey designed a couple of ads that were presented to various people, and I realize it wasn't the probabilities and all that other stuff, but, you know, one of the things that came out that struck me was, you know, it's diplomate, American Board of Oral Implantology slash Implant Dentistry. And the public seemed to be, at least the survey respondents, seemed to be, seemed to focus on the words American Board, which when you think about it, you know, it sort of triggers in your mind board certified. When we think about board certified, we're thinking like the doctors. Why doesn't that sort of suggest some confusion on the part of the public? It should suggest what it is, that some board certified them in this area. What does it mean? What are the predicate requirements? Ask your doctor, ask your dentist, or look it up on the Internet. It's information from which the public can gather more information. But if you, Your Honor, go to the yellow pages, and you have two dental ads, Implant Dentistry, both of them heralding the same red bold ads, John Jones, John Smith, what information do you have about the requisite skill qualification experience? You have none. If there's a diplomate American Board of Oral Implantology, I suspect that you are going to look at that and investigate to see exactly what that does mean and make an appropriate judgment. The survey suggests the consumer might think that American board means board certified by the state or by some national organization or something. The term board in there suggests, as the survey seems to hint, some confusion on the part of the public. And I, Your Honor, I would assume that people seeking legal services, when they see board certified civil trial specialist, National Board of Trial Advocacy, probably think the same thing only in the legal context. And appeals seem to resolve that. And I guess if there were people being maimed in Illinois as a result of this or around the country at this point in time after this many years, something would be revisited. But that clearly hasn't been the case. Is there any requirement that confusion be reasonable? In other words, there's some members of the public who might get confused at almost anything you say. Your Honor, that's absolutely right. And confusion itself does not equate to harm. In our belief, when you look at the case law of Abani and Peel and Central Hudson, confusion itself does not equate to real demonstrable harm. And I think the courts have required more than just hypothetical conjecture of potential harm. You're absolutely right. The public, if you ask them about any credential, even if it's an objectively done survey, properly done probability study, I suspect the public would be confused about many things. How that equates to harm has not been established. Well, you're really asking then that we hold as a matter of law that the public could not be confused by any of this. Is that what you're suggesting? No, I don't think that's at all what we suggest, Your Honor. We'd simply like you to. Well, that's what it sounded like to me. Oh, no. The public can be confused by many things. I'm not suggesting that these studies scientifically demonstrate that, but I will tell you I can look in a phone book and not understand credentials and be confused by those credentials. Will I be harmed by my confusion? I think that's a different issue. Well, is it your position, though I'm probably just restating Judge Cox's question, that the public can't be confused by diplomate of the American Association of Implant Dentistry? They certainly could be confused as to what it means, but it's information from which they could undo their confusion and learn the predicate requirements, what's entailed, what's involved, and come away with some important information relative to making an informed choice as it relates to dentistry. Thank you. Thank you. I'd like to reserve just 30 seconds to conclude, and I'll pick up where we left off. We're not saying they're a sham or a bogus organization. They're just not bona fide under the statute in that it's not an arbitrary standard. That's modeled after the CODA standard, meaning in order to be a specialist, you have to have a formal full-time post-dental school program that you've completed. With regard to what evidence the court could consider, not only the survey evidence shows confusion, but the anecdotal evidence. In Bingham 2, there were four declarations showing consumer confusion and consumers who have been harmed by implant dentists in malpractice actions. In Sim v. Louisiana Dental Board, there were two surveys which showed consumer confusion and misleading, the public being misled. And in Borgner, there were also two surveys showing that the public. Were those surveys from out of state? Yes. Admitted into evidence here? They were admitted into evidence in those states. No, here, in this case, in the district court here. Well, yes. The Bingham 2 case was before this same court and was part of the record. The Sim case was part of the record in that case, and so was Borgner. Yes, it was. And in Florida Bar, the U.S. Supreme Court has said that we have permitted litigants to justify speech restrictions by references to studies and anecdotes pertaining to different locales altogether, or even in a case applying strict scrutiny, to justify restrictions based solely on history, consensus, and simple common sense. Dr. Pott's ads are truthful, but they're misleading. Truthful information can be misleading in the way or manner in which they are presented. The statute does not prohibit the content of truthful information, just the manner or way that it is presented when it's misleading. The fact that it's misleading is undisputed. It makes common sense. Diplomate in the dictionary means you're a specialist. To the extent that a potentially misleading statement of a private certification or specialization could confuse consumers, a state might consider screening certifying organizations or requiring a disclaimer about the certifying organization. That's what Peale held. In this case, we have both. We have the screening mechanism of subsection 2 of the statute, which sets minimum standards for certifying organizations in which a bona fide credential can be conferred or advertised. And then we have the disclaimer, which is clear, precise, doesn't add any additional confusion. It merely states you're a general dentist. In Peale's speech, it allows Dr. Potts and other dentists to freely advertise their procedures, their practices, what they can offer to the public. The harm if somebody reads Diplomate and says, well, this person must be really board certified by ADA or something, and therefore selects that implant dentist over some other implant dentist. There wasn't an option of selecting a board certified implant dentist from the ADA because there's no specialty in it. So this individual goes to somebody who is an implant dentist that they think has more credentials than he has, but he still has more credentials than the average. How has that consumer been harmed? How has the consumer been harmed? Well, if the consumer is misled that that person has gone through a rigorous post-dental academic program. And instead, all he gets is the best that implant dentistry has to offer. Well, if that's the fact, if that is true, the implant dentist can advertise the number of procedures or how long he has been practicing or any kind of other academic achievements he's attained. He can't use the term specialized, specialist, diplomate, or board certified. And that's what the statute says. I know. The statute is narrowly tailored. It only restricts certain defined terms. Specialist or words meaning you're a specialist. And that's it. A very narrow statute. Okay. Thank you. Thank you. The matter will be submitted, and that will adjourn for today and convene tomorrow. Goodbye. The court is in session. Thank you. Thank you.
judges: Canby, Cox , Paez